## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| BRENDA WHITWORTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AVX CORPORATION, and | ) |
| AVX TANTALUM CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

### COMPLAINT
### (JURY TRIAL DEMANDED)

Plaintiff Brenda Whitworth complains against Defendants AVX Corporation and AVX Tantalum Corporation (collectively, "AVX" or "Defendants") as follows:

### PARTIES

1.      Plaintiff Brenda Whitworth ("Plaintiff") is a resident of Biddeford, York County, Maine.  She was employed by Defendants from December of 2016 until her employment was unilaterally terminated on April 15, 2019.

2.      Defendant AVX Tantalum Corporation is a Delaware corporation licensed to do business in the State of Maine.

3.      Defendant AVX Corporation, on information and belief, is the parent company of AVX Tantalum Corporation.  AVX Corporation is a Delaware corporation, headquartered in Fountain Inn, South Carolina.

### JURISDICTION AND VENUE

4.      This action arises under the Maine Human Rights Act, 5 M.R.S. §§

4551 *et seq.* ("MHRA"), and the Maine Whistleblowers' Protection Act, 26 M.R.S. §§

831 *et seq.* ("MWPA").  This court has diversity jurisdiction under 28 U.S.C. § 1332.

Defendants are not citizens of the State of Maine, and the amount in controversy

exceeds $75,000, exclusive of attorneys' fees and costs.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as all acts

complained of occurred within the District. Under L.R. 3(b), this action is properly

filed in Portland because the events occurred in York County.

6.     Plaintiff has satisfied all necessary administrative conditions

precedent prior to bringing this action, including exhausting administrative

remedies by timely filing a complaint with the Maine Human Rights Commission

and obtaining a Notice of Right to Sue.

## FACTUAL ALLEGATIONS

7.     Plaintiff worked in various positions at Defendants' Biddeford, Maine

location from December of 2016 until her employment was unilaterally terminated

on April 15, 2019.

8.     Plaintiff met or exceeded performance expectations at AVX.

9.     In June of 2018, Plaintiff's supervisor, Nick Janc began sexually

harassing her.  Among other things, he asked her questions like "How kinky are you

in bed?" and "Do you like to get freaky?"  He suggested that they could conduct a

secret affair, and told her that he gets a discount at a hotel.  Plaintiff was clear with

Mr. Janc that she was in a committed relationship, and that his comments were

unwelcome and made her extremely uncomfortable.

10.     After Plaintiff rebuffed Mr. Janc's advances, he became outwardly hostile toward her.  He was hyper-critical of her work performance, and made curt and rude comments to her in their interactions.  His hostility toward her persisted throughout the remainder of her employment.

11.     Weeks after being sexually harassed by her supervisor, Plaintiff was sexually harassed by two different male co-workers.  One co-worker told her that she looked "delicious."  This same co-worker had harassed Plaintiff multiple times over the course of her employment; for instance, showing Plaintiff that he had an erection in his pants, and asking her if she "like[s] [his] shorts."  Another co-worker made comments about Plaintiff's dress, and threatened to lift her dress to see what she was wearing underneath.  Plaintiff was overwhelmed by the offensive and inappropriate conduct of her co-workers and supervisor.  She reported the harassment, including the harassment by Mr. Janc, the head of human resources, Scott Beauregard.

12.     Mr. Beauregard told Plaintiff that he would "speak to" the men, but in reality, he failed to take action on Plaintiff's complaints.  He told Plaintiff that he would not formally investigate the complaints until she wrote a statement.

13.     Plaintiff was fearful that if she wrote a statement, Mr. Janc and her co-workers would retaliate against her.  She was concerned that writing a statement would jeopardize her continued employment.  She explained this to Mr. Beauregard as her reason for not wanting to put her complaints into writing.

14.     Mr. Beauregard never investigated Plaintiff's complaints.

15.     However, after Plaintiff made her reports to HR, Plaintiff's floor supervisor, Linda Kuczynski (Mr. Janc's direct subordinate) joined Mr. Janc in scrutinizing Plaintiff's work, and being outwardly hostile toward Plaintiff.

16.     Over the next several months, Mr. Janc and Ms. Kuczynski singled Plaintiff out from her co-workers, rebuked her, and criticized her work habits.

17.     Plaintiff continued to report to Mr. Beauregard that Mr. Janc and Ms. Kuczynski were retaliating against her for reporting sexual harassment.  She also told him that the hostility and stress she was enduring at work was having negative effects on her mental health.

18.     Mr. Beauregard continued to refuse to investigate Plaintiff's reports of sexual harassment and/or the subsequent retaliation.

19.      Despite Mr. Beauregard's refusal to act on Plaintiff's repeated complaints, Plaintiff continued to report her supervisors' hostility and retaliation to him.

20.     In the weeks leading up to Plaintiff's termination, Mr. Janc and Ms. Kuczynski told Plaintiff that she had to inform them, and receive their permission, before going to HR with any issues.  They threatened her with discipline if she did not comply.

21.     In late-March of 2019, Plaintiff asked Mr. Janc for permission to go to HR.  He told her to wait, but eventually allowed her to go during her break.

22.     When Plaintiff reported, again, that Mr. Janc and Ms. Kuczynski were retaliating against her for the reports, Mr. Beauregard said he would "talk to them."

23.     A few days later, Plaintiff told Mr. Beauregard that she was willing submit her complaints in writing.  She requested a complaint form, but was told that none exist.

24.     Plaintiff told Mr. Beauregard that she intended to consult a lawyer about writing the report, and would follow up with him.

25.     Approximately two weeks later, On April 15, 2019, Mr. Beauregard terminated Plaintiff's employment.  He told Plaintiff that she was being "laid off" and that it was not performance-based.

26.     Plaintiff later requested a written reason for her termination. Defendants responded, claiming that Plaintiff's employment had been terminated because of her "inability to work as a cohesive member of the working group."

<u>COUNT I</u>
**Unlawful Retaliation**
**26 M.R.S. § 833 and 5 M.R.S. § 4572**

27.     Plaintiff repeats the allegations contained in Paragraphs 1 through 26.

28.     Plaintiff, acting at all times in good faith, reported to her employer, and opposed, what she believed was unlawful gender discrimination and harassment. Plaintiff reasonably believed the harassment amounted to violations of state laws and rules.

29.     Plaintiff's opposition to her supervisor's unwelcome harassment, and her continued reports of ongoing harassment and unlawful retaliation to HR, constitute opposition to her employer's conduct.

30.     Plaintiff's actions set forth above constitute "protected activity" under the Maine Whistleblowers' Protection Act and Maine Human Rights Act.

31.     By subjecting Plaintiff to a hostile work environment and by terminating her employment, Defendants took "adverse employment action" against Plaintiff.

32.     There exists a causal connection between Plaintiff's protected reporting activities and the adverse employment action she experienced.

33.     As a direct and proximate result of Defendants' unlawful discrimination and retaliation, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants for all damages to which she may be entitled, including, but not limited to:

   A.     An order for Defendant to reinstate Plaintiff to her position, or front pay in lieu of reinstatement;
   B.     Back wages dating back to April 15, 2019;
   C.     Compensatory damages including, but not limited to, mental anguish, loss of dignity and other intangible injuries;
   D.     Punitive damages as determined by a jury;
   E.     An award of attorney's fees and all costs incurred herein; and
   F.     All other damages to which Plaintiff may be entitled.

## COUNT II
### Gender Discrimination
### 5 M.R.S. § 4572

34.     Plaintiff repeats the allegations contained in Paragraphs 1 through 33.

35.     Plaintiff, a female, is a member of a protected class.

36.     By treating Plaintiff in disrespectful and demeaning ways, subjecting her to unlawful harassment and a hostile work environment, disregarding and refusing to investigate her complaints of harassment, and terminating her

employment, Defendants, through one or more management level employees, took adverse employment action against Plaintiff.

37.     Plaintiff's gender was a motivating factor in Defendants' actions.

38.     As a direct and proximate result of Defendants' actions, set forth herein, Plaintiff suffered damages to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants for all damages to which she may be entitled, including, but not limited to:

A.     An order for Defendant to reinstate Plaintiff to her position, or front pay in lieu of reinstatement;
B.     Back wages dating back to April 15, 2019;
C.     Compensatory damages including, but not limited to, mental anguish, loss of dignity and other intangible injuries;
D.     Punitive damages as determined by a jury;
E.     An award of attorney's fees and all costs incurred herein; and
F.     All other damages to which Plaintiff may be entitled.

**PURSUANT TO FED. R. CIV. P. 38(b), PLAINTIFFS REQUEST TRIAL BY JURY OF ALL CLAIMS SO TRIABLE BY RIGHT.**

**Dated**: January 13, 2021 Respectfully Submitted,

*/s/ James A. Clifford*
James A. Clifford (james@cliffordclifford.com)

*/s/ Andrew P. Cotter*
Andrew P. Cotter (andrew@cliffordclifford.com)

CLIFFORD & CLIFFORD, LLC
62 Portland Rd., Suite 37
Kennebunk, ME 04043
(207) 985-3200